**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MODERN REMODELING, INC.             *

                                  *             Civil Action No. CCB-19-1397

        v.                          *

                                    *

TRIPOD HOLDINGS, LLC, *et al.*             *

                                  *

                                  *

                                **\*\*\*\*\***

## MEMORANDUM

Now pending is a motion for sanctions filed by Modern Remodeling, Inc. ("MRI") against the various defendants in this action arising out of a discovery dispute. (ECF 130). MRI contends that the defendants and their counsel have destroyed evidence, selectively produced evidence, and lied under oath during their depositions. The defendants deny these allegations and counter that MRI has engaged in many of the very same practices which it accuses the defendants of engaging in. For the purpose of this motion, the defendants consist of two groups: the Tripod Defendants[1] and the Sales Defendants.[2] The Tripod Defendants have responded (ECF 145) and the Sales Defendants have adopted the Tripod Defendants' opposition (ECF 143). MRI has replied to both responses (ECF 160, 161) and oral argument was heard on April 27, 2021. For the reasons discussed herein, the court will grant in part, reserve in part, and deny in part the motion for sanctions.

## FACTS

MRI is a general contracting company that works in the insurance restoration industry; it assists clients with maximizing insurance coverage and performing repairs following natural

---

[1] The Tripod Defendants include Tripod Holdings, High Mark Construction, Strong Wall Construction, MGB Investments, Patrick Boyle, Robert Kimball, and David Drab.

[2] The Sales Defendants include Earl Edwards, Robert Keenan, Randy Moran, and Matthew Olesky.

disasters. Jonathan Ballard owns MRI, which is based in Virginia but has offices in Maryland. (ECF 19, Tripod Answer at ¶ 1). This action concerns the personnel at the Maryland office. Relevant here, Stephen Trancucci and Boyle were partners[3] in that office; Kimball was a sales manager; Drab was the Director of the Complex Division; and Edwards, Keenan, Moran, and Olesky were in sales.

In MRI's view, Boyle, Kimball, and Drab started planning to create a rival company (the Tripod Entities) in the spring of 2018. They allegedly stopped working for MRI, used MRI resources to establish the Tripod Entities, and solicited MRI employees such as the Sales Defendants to work for Tripod. MRI believes that in September 2018 the Tripod Defendants stole and destroyed paper and electronic copies of MRI employees' non-compete agreements to obstruct MRI's ability to challenge the departure of any of its employees who might leave to join Tripod.

Tripod began operations in February 2019, though Trancucci and others at MRI did not learn of its existence until April 17, 2019. Meanwhile, between December 2018 and April 2019, the Tripod Defendants and Sales Defendants left MRI to join Tripod: Keenan left on December 31, 2018; Kimball on January 8, 2019; Olesky on January 23, 2019; Drab on January 25, 2019; Moran on February 8, 2019; Edwards on February 22, 2019; and Boyle on April 23, 2019. Between February 2019 and April 23, 2019, MRI believes that Boyle secretly acted as an agent for Tripod while he remained in MRI's employ. They allege he deleted documents, including leads for new business and emails; for example, in February 2019, Boyle received a customer lead for MRI, sent the opportunity to Tripod, and deleted the lead from MRI's database. (*See* ECF 130-13, Ex. 12 at TRIPOD000010332; *see also* ECF 130-37, Ex. 36 at MRI006976 (MRI's software development

---

[3] The exact titles and status of each employee is disputed. Boyle maintains he was an owner/partner; the defendants maintain that Jonathan Ballard was the sole owner and that Boyle was an independent contractor.

lead surmising that Boyle deleted eight other contacts)). And text messages demonstrate that on February 26, 2019, Boyle informed Keenan and Kimball that Keenan had accidentally sent an email to Kimball's and Moran's inactive MRI accounts. Boyle asked them to delete the MRI email addresses from their contacts, and Keenen noted that it was good they had "our mole still planted at the enemy." (ECF 130-13, Ex. 12 at TRIPOD000010333). The email cannot be located, and MRI concludes this confirms Boyle deleted it. (*See* ECF 130-1 at 6).

On April 18 and April 19, 2019, a text message thread between Kimball and Boyle includes a screenshot of the law firm Panish Shea & Boyle LLP and the exchange of contact information for Tyler Nowicki, who was ultimately retained as counsel for the Sales Defendants. (*See* ECF 130-17, Ex. 16 at TRIPOD000010263–64). On April 23, 2019, Kimball and Boyle discussed the possibility that they would get a "letter from an attorney" and that there may be "a suit coming[.]" (*Id.* at TRIPOD0010267).

That same day, April 23, 2019, Boyle resigned from MRI over the phone and Trancucci directed him not to alter his laptop before he brought it in. (*See* ECF 130-16, Ex. 15, Trancucci Dep. at 585:1–8). When MRI eventually had the laptop forensically imaged, MRI's expert concluded that Boyle deleted the contents of the laptop at 7:19 p.m. on April 23, 2019, by means of a factory reset. (*See* ECF 130-18, Ex. 17, Forensics Report at MRI006673).

The next day—the day after Boyle resigned—MRI sent the defendants cease and desist letters instructing them not to destroy or delete any documents or files related to these issues and to suspend any normal documentation, email or electronic information destruction policies or programs. (*See* ECF 130-19, Ex. 18).

Then, on May 10, 2019, MRI brought this unfair competition case against the defendants. The amended complaint contains ten counts for breach of contract; violations of the Computer

Fraud and Abuse Act, 18 U.S.C. § 1030; breach of the duty of loyalty; tortious interference with a contract; tortious interference with a prospective business advantage; civil conspiracy; conversion; unfair competition; and unjust enrichment. (*See* ECF 64). Defendant Drab has raised counterclaims for breach of contract and violation of Maryland's Wage Payment and Collection Act. (*See* ECF 19).

The plaintiffs served a request for production of documents on the defendants along with their complaint on May 10, 2019. Much of the dispute relevant to this motion for sanctions concerns the alleged failure to preserve or produce electronically stored information (ESI) and the alleged spoliation of other evidence, which is summarized in the paragraphs to follow.

A. *Laptops*

Kimball's laptop was reset to its factory settings on January 4, 2019, a few days before his resignation on January 7, 2019. (*See* ECF 130-18, Ex. 17, Forensics Report at MRI006671). And, as explained previously, Boyle's laptop was restored to its factory settings on April 23, 2019, several hours after he resigned. (*See id.* at MRI006673). As a result, MRI contends it has been deprived of internet browser history, USB connection history, and "link" file history—which might help determine what files the user was accessing—and other digital evidence which might demonstrate what Boyle was doing for Tripod while still employed at MRI. (*See* ECF 130-1 at 10).

B. *Text Messages*

MRI sought production of text messages between the various defendants during the period when the Tripod Defendants were establishing their business and leaving MRI. Of the defendants in this action, only Kimball and Edwards produced any text messages; the rest of the defendants claimed they set their phones to automatically delete text messages. Cell phone records and the

messages produced by Boyle demonstrate that the defendants frequently texted each other during the relevant time period. (*See, e.g.*, ECF 130-35, Ex. 34, Olesky Verizon Text Log, VERIZON017). Of particular focus in MRI's motion are Kimball's and Boyle's text messages.

   *1. Kimball*

   Kimball produced messages from September 18, 2018, and later. However, as MRI explains, Kimball initially claimed he had no relevant text messages to produce and did not turn over his cell phone for counsel to review until January 2020. MRI contends that Kimball selectively deleted text messages based on (1) the proposition that it is implausible to believe Boyle and Kimball did not text each other even once prior to September 18, 2018, when they were planning to create a new business, and (2) its analysis of the iPhone's "tapback" feature, which allows users to like or to emphasize a text message. The software on some of the defendants' phones displayed tapbacks as a separate text message quoting the original message:



(ECF 130-21, Ex. At TRIPOD009578). But when MRI examined Kimball's text messages, they noticed that some tapbacks appeared even where the original message from Kimball did not:



(*Id.*). According to MRI's expert, this indicates that Kimball deleted the original text message but failed to delete the tapback message. (*See* ECF 130-20, Ex. 19, Hilary Aff. at ¶ 12). MRI's expert found several messages for which this occurred, including one on January 7, 2019, and one on January 18, 2019.  (*See id.* at ¶¶ 12–13; *see also* ECF 130-22, Ex. 21 at TRIPOD009616). MRI

contends these messages are potentially relevant to their claims. The January 7, 2019, tapback shows Moran emphasizing a message from Kimball saying, "Enjoy the time off[[.] Rest up now it's almost GO TIME." (ECF 130-21, Ex. 20 at TRIPOD009577). The January 18, 2019, message shows Moran "liking" Kimball's statement, "Yo send me your expected deals for high mark jump off," which may be a reference to Kimball's role at High Mark Construction, LLC. (*Id.* at TRIPOD009578).

2. *Boyle*

At the heart of MRI's motion is Boyle's testimony concerning his text messages. During his first deposition, on December 13, 2019, Boyle testified he had not deleted any text messages from his phone. (*See* ECF 130-7, Ex. 6, Boyle Dep. at 16:1–20). Then, during his second deposition, ten days later, Boyle stated that his cell phone automatically deleted all text messages after a certain number of days and that he had not changed this setting after litigation began. (*Id.* at 488:22–492:3, 570:19–571:7). MRI found this assertion implausible given that, in November 2019, Boyle had produced screenshots of text messages between himself and Trancucci from March 2016 to April 2019. (*See* ECF 130-24, Ex. 23 at TRIPOD00007909–59). The screenshots did not include entire conversations and appeared not to be in context. Boyle explained that he took the screenshots of those text messages around the time the messages were exchanged such that the screenshots were not captured by the auto-delete function even though the original text messages were; he claimed during his December 23, 2019, deposition that he still had the screenshots on his cell phone. (*See* ECF 130-7, Ex. 6, Boyle Dep. at 488:22–493:21, 490:16–19).

Dubious of Boyle's explanation, MRI asked Boyle at his third deposition why the screenshots—which captured text messages spanning multiple years—appear to have been taken at the same time or in one sitting (around 10:36 PM, judging by the phone's time display), and

with the phone displaying the same battery life (about half charged), and with the same icons at the bottom of the phone's screen. In response, Boyle stated that he goes through his emails and texts at the same time every night and takes screenshots of any notable conversations. (*See id.* at 586:3–18). MRI believes that at least some of these screenshots could not have been taken within thirty days of their being sent because, among other reasons, the iPhone's Animoji icon, which appears on all the screenshots, was not introduced until late 2017, and some of the text messages were from 2016. (*See* ECF 130-20, Ex. 19 at ¶ 16).

To verify Boyle's explanation, MRI requested the metadata for the screenshots. On March 6, 2020, Mr. Maneche, Boyle's counsel, stated that the metadata no longer existed and that Boyle told him he had taken screenshots, printed them, deleted the screenshots, and provided the paper printout to counsel. (*See* ECF 130-14, Ex. 13 at ¶ 8). MRI contends that Boyle deleted all of his text messages to conceal evidence of his culpability, and then he destroyed the metadata for the screenshots when he realized that it may prove his deposition testimony false. (*See* ECF 130-1 at 17–18). At oral argument, Mr. Maneche represented that he would produce the metadata for plaintiff's counsel to review; the court therefore ordered counsel for the defendants to provide a status report on this production by May 4, 2021. (*See* ECF 170). On May 4, counsel for MRI filed a status report indicating that "MRI does not yet have the native files in a format that would permit MRI to determine when the screenshots were taken" because the files produced were ones "Boyle sent to his counsel via email" and which "do not appear to contain the metadata necessary to determine the date Boyle took the screenshots." (ECF 172). Counsel believed the "only way" to determine this was to "review the original files from Boyle's cell phone." (*Id.*). Three days later, counsel for MRI filed another status report noting that "Tripod is unable to produce the metadata from Boyle's screenshots" because the native files "no longer exist on Boyle's [cell]phone." (ECF

174). In response, counsel for the defendants confirmed that the native files no longer exist on Mr. Boyle's phone and acknowledged that Mr. Boyle deleted the screenshots sometime after November 2019 and before the filing of MRI's motion for sanctions. (*See* ECF 175).

   *C.  Emails*

MRI also sought production of various emails, and MRI now contends that the defendants selectively deleted some of those emails in a similar manner and with a similar motive as they purportedly did with their text messages. The following chart summarizes the subject of each email and its production status.

| Sender – Recipient | Subject | Date | Produced | Alleged Discovery Abuse |
|---|---|---|---|---|
| Boyle – Edwards | Tripod healthcare plan | December 11, 2018 | Yes (ECF 130-26, Ex. 25) | Defendants did not produce this email; rather, Trancucci retrieved this email from Edwards' email account |
| Kimball – Olesky | Soliciting Lorenzo, an MRI client | January 16, 2019 | No | Text messages suggest this exists (*see* ECF 130-21, Ex. 20 at TRIPOD009961), but it has not been produced |
| Kimball – Edwards | Tripod job description | January 19, 2019 | Yes (ECF 130-26, Ex. 25) | Defendants did not produce this email; rather, Trancucci retrieved this email from Edwards' email account |
| Kimball – Keenan | Tripod job description | January 19, 2019 | Yes (ECF 130-27, Ex. 26) | Defendants did not produce this until May 2020, after the close of discovery |
| Kimball – Moran and Olesky | Tripod job description | Around January 19, 2019 | No | Text messages suggest this exists (*see* ECF 130-21, Ex. 20 at TRIPOD009961), but it has not been produced |
| Kimball – Sales Defendants | Maryland salesperson exam | January 25, 2019 | Yes (ECF 130-28, Ex. 27) | Only Keenan produced this email; it was not produced until May 2020, after the close of discovery |
| Sales Defendants – Kimball | Completed Maryland salesperson exam paperwork | After January 25, 2019 | Yes (not in exhibits) | Only Keenan produced this email |
| Kimball – Sales Defendants | "Schedule Next Week" for Tripod's opening week | January 28, 2019 | Yes (ECF 130-29, Ex. 28) | Only Keenan produced this email |
| Edwards – Kimball | Completed insurance paperwork | January 29, 2019 | Yes (ECF 130-30, Ex. 29) | The Tripod Defendants failed to produce this email |

In all, MRI has four types of grievances with respect to these emails: first, that some emails were not produced at all and may have been deleted (the Lorenzo email and the job description emails sent to Moran and Olesky); second, that some emails were not produced, and may have been deleted, by some but not all of the defendants (the Maryland salesperson exam emails, the Schedule Next Week emails, and the completed insurance paperwork emails); third, that some of the emails were not produced, and may have been deleted, by all of the defendants, but were nevertheless obtained through other means by the plaintiffs (the Edwards health insurance and job description emails); and fourth, that some of the emails, which the defendants initially claimed did not exist or were deleted, were not produced until discovery had long closed (the Keenan job description email and the Maryland salesperson exam emails).

### D. Partnership Agreement

Finally, MRI sought production of a handwritten operating agreement identified by Boyle during his deposition and which Boyle, Kimball, and Drab purportedly signed in 2018. (*See* ECF 130-7, Ex. 6, Boyle Dep. at 73:19–75:19). MRI contends this document would demonstrate when and to what extent the Tripod Defendants had finalized plans for Tripod while they were still working for MRI. Boyle testified that this was an informal, handwritten document, (*see id.* at 76:1– 11), and that he had it in his possession at some point, but "may" have destroyed it once the final operating agreement was executed, but he could not "recall[,]" (*see id.* at 77:13–19). In an affidavit filed as an exhibit to his opposition to MRI's motion for sanctions, Boyle stated that he believes he has been unable to locate the document because his family misplaced several moving boxes when they relocated in October 2019. (*See* ECF 145-17, Ex. 17, Boyle Aff. ¶¶ 5–9).

*** * ***

To resolve some of the disputes over the production of these text messages, emails, and documents, Judge Boardman held conference calls on January 9, 27, and 29, 2020, and issued a letter order granting in part and denying in part MRI's motion. (ECF 98). As a compromise between the parties' competing positions and to achieve proportionality, Judge Boardman ordered the defendants to produce relevant text messages from July 1, 2018, through May 10, 2019, and extended the discovery deadline to February 6, 2020, for the limited purpose of facilitating this production. (*See id.* at 2). The Tripod Defendants subsequently produced over 1,000 pages of text messages, largely from Kimball's phone, over three separate dates: January 28, 2020; February 28, 2020; and March 10, 2020. MRI laments that it took sixteen depositions between November 2019 and February 2020 largely without the benefit of the documents it had requested from the defendants. As a result, MRI filed this motion for sanctions on December 18, 2020. Oral argument was heard on April 27, 2021, and the motion is now ripe for consideration.

## ANALYSIS

Spoliation is "the destruction or material alteration of evidence" or "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A court's power to issue sanctions for spoliation derives from Federal Rule of Civil Procedure 37 and from its inherent power to police discovery misconduct. *See id.*; *see also* Fed. R. Civ. P. 37(e). District courts have broad discretion to decide whether to impose sanctions for spoliation. *See Turner v. United States*, 736 F.3d 274, 281–82 (4th Cir. 2013). Still, any sanction should be crafted to "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine," *Silvestri,* 271 F.3d at 590 (internal quotations omitted), which include deterring parties from engaging in spoliation, placing the risk of an erroneous judgment on the party who wrongfully created the risk, and restoring the

prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party, *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018). The burden of proof on a motion for sanctions in the Fourth Circuit is somewhat unsettled, though the "general approach" has been "to apply the clear and convincing evidence standard[.]" *Id.* at 104.

In this case, the plaintiffs seek sanctions under both Rule 37(e) and under the court's inherent powers. The court addresses each in turn.

## I.  Rule 37(e) Threshold Findings

Federal Rule of Civil Procedure Rule 37(e) governs the preservation of electronically stored information ("ESI"). It provides that if ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the court may impose certain sanctions depending on the circumstances. Fed. R. Civ. P. 37(e). A party moving for sanctions under Rule 37(e) must meet four threshold requirements before a court decides if any spoliation sanction is appropriate. *Steves and Sons, Inc.*, 327 F.R.D. at 104. Specifically, the movant must show that "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Id.*; *see also Shackleford v. Vivint Solar Developer LLC*, No. ELH-19-954, 2020 WL 3488913, at *11 (D. Md. June 25, 2020) (same).[4] The court addresses each threshold element in turn.

### A.  Duty to Preserve

---

[4] Unpublished opinions are cited for the soundness of their reasoning and not for their precedential value.

A party seeking sanctions based on the spoliation of evidence must first establish that "the alleged spoliator had a duty to preserve material evidence[,]" which arises "'not only during litigation but also extends to the period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Turner*, 736 F.3d at 282 (quoting *Silvestri*, 271 F.3d at 591). This inquiry has two components: (1) "whether [a party] should have reasonably anticipated litigation" and (2) "whether [a party] should reasonably have known that the evidence he deleted might be relevant to such litigation." *Steves and Sons, Inc.*, 327 F.R.D. at 105. "Before litigation begins, courts agree that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence." *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 512 (S.D.W. Va. 2014) (citing *Turner*, 736 F.3d at 282; *Silvestri*, 271 F.3d at 592; and *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 181 (D. Md. 2008)). In other circumstances, "the analysis is highly case specific and fact dependent." *Id.*

### 1. When the Duty to Preserve Arose

In this case, MRI argues that at the latest, the Tripod Defendants could anticipate litigation on April 18, 2019, when Trancucci told Boyle there was a possibility of lawyers and suits, and the Sales Defendants could anticipate litigation on April 24, 2019, when MRI's lawyers sent the cease and desist letters. (*See* ECF 130-1 at 32–33). But MRI urges this court to accept its contention that the Tripod Defendants should have anticipated litigation much earlier, in the fall of 2018. MRI reaches this conclusion because: (1) the defendants allegedly destroyed their non-compete agreements and (2) Kimball forwarded emails that made Trancucci look bad from his MRI email to his personal email "in case something were to become a problem." (ECF 130-1 at 32; *see also* ECF 130-3, Ex. 2, Kimball Dep. at 502:19-25).

13

While there is evidence of the *possibility* of litigation in the fall of 2018, the court has seen no clear and convincing evidence that the defendants should have reasonably *anticipated* litigation then. *See Sonrai Sys., LLC v. Romano*, No 16 C 3371, 2021 WL 1418405, at *18 (N.D. Ill. Jan. 20, 2021) ("knowledge of the possibility of litigation does not create a duty to preserve evidence"), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021). Even assuming that the defendants actually destroyed their non-competes and were aware that this angered Trancucci,[5] this merely shows that litigation was possible; it does not demonstrate that any of the defendants should have anticipated litigation. *See id.* at *7, *18 (defendant need not have reasonably anticipated litigation where defendant was told his employer was worried about him leaving for a competitor and where defendant was asked if he had ever signed a noncompete or nondisclosure agreement). And as for saving the Trancucci emails, Kimball testified that he did this because he believed Trancucci was committing insurance fraud and he wanted to preserve evidence that the purported fraud was executed at Trancucci's behest, not Kimball's. (*See* ECF 145-11, Ex. 11, Kimball Dep. at 514:22–515:9). Even if this indicates that Kimball may have

---

[5] This assumption is contested. MRI cites to an email from September of 2018 from Boyle to Drab which it says contains a joke about Drab's unsigned offer letter and non-compete. In the exchange, Drab writes, "I never received my year end bonus? See letter lol." And Boyle responds, "Talk to Steve." (ECF 130-4, Ex. 3). MRI argues that there is no logical business reason to explain why Boyle would be going through employee files and looking at non-competes at this time. Yet given that Drab mentions he was never paid his bonus, it is not clear that there was no legitimate business purpose to be looking in employee personnel files. MRI also cites Mark McLean's declaration, which states that only he—as CFO—and Patrick Boyle had access to the company's files stored in the cloud, that he uploaded Moran's non-compete to the cloud, that it subsequently was deleted from the cloud, and that he did not delete it. (*See* ECF 130-6, Ex. 5 at ¶¶ 12–13). But even if MRI had a policy of requiring everyone to sign a non-compete, it apparently did not adhere to it consistently. (*See* ECF 145-4, Ex. 4, McLean Dep. at 290:19–291:22 (stating that 11 of 15 employees whom McLean onboarded at MRI did not execute non-competes)). And Kimball, Edwards, Olesky, and Keenan all testified they did not sign non-competes. (*See* ECF 145, Ex. 11, Kimball Dep. at 155:5-8; Ex. 12, Edwards Dep. at 56:8-23; Ex. 13, Olesky Dep. at 129:4-23; Ex. 14, Keenan Dep. at 7:17–8:25).

anticipated litigation in the fall of 2018, it would only indicate that Kimball may have anticipated an action for fraud, but not the unfair competition litigation that is the subject of this action. Thus, MRI has not adduced clear and convincing evidence that the Tripod defendants should have anticipated litigation in the fall of 2018.

Instead, it appears the earliest that Boyle reasonably should have anticipated litigation is April 23, 2019, when Trancucci told Boyle—prior to his resignation—that he needed to talk to some lawyers Trancucci had hired. (*See* ECF 130-16, Ex. 15, Trancucci Dep. at 583:5-24; ECF 130-17, Ex. 16 at TRIPOD000010267). The rest of the Tripod Defendants and the Sales Defendants should reasonably have anticipated litigation at the latest on April 24, 2019, when MRI's lawyers sent them cease and desist letters. (*See id.*; *see also* ECF 130-19, Ex. 18). As a result, any evidence that the defendants destroyed or failed to preserve prior to those dates may not form the basis of any sanctions.

### a. Laptops

The court concludes that Boyle had a duty to preserve evidence on his MRI laptop when he reset it after he resigned on April 23, 2019, but Kimball had no such duty when he reset his in January 2019.

### b. Text Messages

Without knowing when or if certain text messages were actually deleted, it is difficult to determine whether the defendants had a duty to preserve them. However, it is now clear that Boyle retained at least some of his text messages as late as November 2019, after litigation had commenced, given that the screenshots of text messages he produced in November 2019 include messages dating back at least to March 5, 2016. (*See* ECF 145 at 22; ECF 145-5, Maneche Aff. at ¶ 8; ECF 130-24, Ex. 23 at TRIPOD 7945). The rest of the defendants, with the exception of

Kimball, who did preserve at least the bulk of his text messages, claim that their phones were set to automatically delete text messages after thirty days. Edwards also claimed his text messages automatically delete after thirty days, but in June 2020 he produced text messages dating back to 2018. (*See generally* ECF 130-25, Ex. 24). MRI asserts, given the factory default setting for an iPhone is to preserve text messages indefinitely, that it is implausible that each of these defendants would have independently changed their phones' settings to delete text messages automatically after thirty days. It is troubling and somewhat suspicious that each defendant claims to have set their phones to automatically delete messages every thirty days, but the court requires clear and convincing evidence, rather than counsel's assertion of a statistical likelihood, to make its determination. Therefore, the court determines that, with the exception of Boyle, Kimball, and Edwards, the defendants had a duty to preserve text messages dating back only to March 24, 2019—the earliest date that messages may have been preserved had they made reasonable efforts to do so upon receiving the cease and desist letters from MRI.[6]

### c. Emails

The Tripod Defendants maintain that they did not delete any of their emails. (*See* ECF 130, Ex. 2, Kimball Dep. at 204:25–205:3, 606:19–607:18; Ex. 6, Boyle Dep. at 14:15–15:1, 572:19-25; Ex. 7, Drab Dep. at 22:17–23:4). This is confirmed by events occurring during Ballard's deposition on January 17, 2020. Mr. English (counsel for MRI) and Mr. Allen (counsel for the Tripod Defendants) debated whether each side had produced a series of emails between Trancucci and Boyle to the other side; in theory, both sides should have produced the emails, as Trancucci is on the plaintiff's side and Boyle on the defendants'. (*See* ECF 130-36, Ex. 35, Ballard Dep. at

---

[6] Based on the wireless carrier records for Olesky alone, it appears there were hundreds of text messages sent among the various defendants in April 2019, which would have been subject to a duty to preserve. (*See* ECF 130-35, Ex. 34 at VERIZON017).

65:12–68:4). After a break in the deposition, Mr. Allen was able to produce some of the contested emails, which date back to 2015. (*See id.* at 106:16–107:21). This suggests—and Boyle confirms— that he did not set his phone to automatically delete his emails and that he had relevant emails in his inbox in January 2020 which were subject to a duty to preserve. (*See* ECF 130-7, Ex. 6, Boyle Dep. at 571:12–572:25). As for the Sales Defendants, they testified that they had auto-delete settings for their email accounts, (*see* ECF 130, Ex. 8, Keenan Dep. at 74:8–75:2; Ex. 9, Olesky Dep at 38:18–23; Ex. 10, Moran Dep. at 29:3–13; Ex. 11, Edwards Dep. at 68:10–74:4), but nevertheless in May 2020 they were able to produce 33,000 pages of emails dating back to 2018. (*See* ECF 130-1 at 24; *see also, e.g.*, ECF 130-28, Ex. 27, Maryland Home Improvement Email). This confirms that they, too, had emails in their inboxes subject to a duty to preserve.

***

In sum, the court finds that there was a duty to preserve: (1) the information on Boyle's laptop; (2) Kimball's, Boyle's, and Edwards' text messages; (3) Drab's, Keenan's, Olesky's, and Moran's text messages from March 24, 2019, forward; and (4) all of the defendants' emails. But the court has not seen clear and convincing evidence that the information on Kimball's laptop was subject to a duty to preserve before it was deleted.

### 2. *Relevance of Evidence Post-Dating Duty to Preserve*

The next question is what evidence in the defendants' possession after the duty to preserve arose a party should have reasonably known was relevant to the litigation, as only relevant evidence destroyed or lost after a duty to preserve arose may form the basis for a motion for sanctions under Rule 37(e). The court is in the difficult position of evaluating the relevance of evidence it cannot see. MRI contends that there surely were relevant messages and information on the defendants' computers and cell phones and in their emails. The defendants contest this motion

17

only on grounds of when the duty to preserve arose (and whether prejudice can be demonstrated, an issue addressed later), not whether the information allegedly deleted or lost was relevant to the litigation. Given the demonstrated relevance of many of the text messages and emails from the period dating from July 1, 2018, that were produced by the defendants, the court is satisfied that the documents and files allegedly lost or destroyed included information relevant to the litigation.[7]

### B. Loss of ESI & Possibility of Replacement or Restoration

Information is lost if it is irretrievable from another source. *See Steves and Sons, Inc.*, 327 F.R.D. at 107; *see also* Fed. R. Civ. P. 37, advisory committee notes to the 2015 amendments ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."). In this case, MRI has requested documents from the defendants multiple times, hired a computer forensics expert to analyze Boyle's laptop and advise on the retrievability of emails and texts, and subpoenaed the defendants' wireless carriers. (*See* ECF 130-1 at 35). The defendants point out that because Kimball did not delete his text messages, MRI should have access to any relevant text messages sent between the defendants and Kimball and it should be of no consequence whether those messages are retrieved from Kimball's phone or, for example, Boyle's phone. But as MRI argues, this does not ensure that MRI has access to conversations between Boyle and Drab, or between Boyle and the Sales Defendants, and the subpoenaed records from the wireless carriers indicate there were messages sent between these other defendants that did not include Kimball. (*See, e.g.*, ECF 130-35, Ex. 34, Olesky

---

[7] Additionally, "[w]hen the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed in the Fourth Circuit." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010). As explained herein, the court finds that Kimball's tapback messages, Boyle's text messages, and the defendants' missing emails were intentionally deleted, so the court presumes they were relevant to this litigation.

Message Log (showing that in April 2019 alone, Olesky sent or received hundreds of text messages, not counting iMessages, with the other defendants)). And some of the emails are not able to be retrieved through other custodians, such as the Maryland Salesperson application emails from Olesky, Moran, and Edwards. Nor is there any indication that restoration or replacement of these messages is possible. The defendants did not agree to a forensic evaluation of their cell phones and computers, and, in any event, MRI's expert doubts such an evaluation is capable of producing the missing emails or text messages. (*See* ECF 130-20, Ex. 19, Hilary Aff. at ¶ 19). The defendants appear not to contest that this ESI is lost and irretrievable.

There are, however, three categories of evidence for which there is insufficient evidence of loss. The first is the Lorenzo email exchange between Kimball and Olesky, which purportedly included an MRI vendor identified as "Lorenzo" with the initials "LH." (*See* ECF 130-1 at 22–23; *see also* ECF 130-21, Ex. 20 at TRIPOD009661–62). There is no evidence that MRI has attempted to retrieve this email from Lorenzo directly, so the court cannot conclude that this email is irretrievably lost.

The second category is the text messages between Kimball and Boyle predating September 28, 2018. The court has not seen clear and convincing evidence that these messages existed, or that they were deleted after the duty to preserve arose. MRI contends that it is implausible that Kimball would have had a group text message conversation with Boyle and Drab during this time period—when they were allegedly establishing Tripod—without ever texting Boyle individually or privately during the same time period. Without any other evidence confirming that these messages existed in the first place, the court is unable to conclude that they are lost.[8]

---

[8] Even if there were sufficient evidence to conclude they were lost, it is not clear what prejudice may have resulted. MRI argues this is a critical period in which the Tripod Defendants first started telling MRI employees about the new business and it is when they allegedly destroyed non-

Finally, the third category is Edwards' text messages. These were produced in January 2020 after Edwards turned his cell phone over to counsel, who employed a third-party vendor to run a search. (*See* ECF 130-1 at 19–20; *see also* ECF 130-25, Ex. 24 at SALES001071–75)). While these messages were produced later in the discovery period than MRI may have wished, they are not, by definition, lost.[9]

### C.  Reasonable Efforts

The duty to preserve does not require the preservation of every last email or electronic document, but a party generally must suspend any routine document retention or destruction policies and put in place a litigation hold to ensure relevant documents are preserved. *See Steves and Sons, Inc.*, 327 F.R.D. at 108.

### 1.  Laptops

Boyle reset his laptop on April 23, 2019, four days after he was apparently seeking to retain counsel. (*See* ECF 130-17, Ex. 16 at TRIPOD000010263–64). When in anticipation of litigation, a reasonable person concerned about protecting his personal information—as Boyle claimed to be—would have turned his laptop over to counsel or otherwise sought the advice of counsel. *See Aramark Mgmt., LLC v. Borgquist*, No. 8:18-cv-01888-JLS-KESx, 2021 WL 864067, at *17 (C.D. Cal. Jan. 27, 2021) (recycling laptop after litigation commenced and without consulting with counsel about whether it should be retained was unreasonable), *report and recommendation*

---

compete agreements. However, MRI appears to have evidence that the Tripod Defendants were soliciting MRI employees in December 2018 and January 2019, so it is not clear why it would be important to have additional evidence of even earlier solicitation. Nor is the court able to discern why Kimball would have deleted these allegedly inculpatory messages while preserving others that were also inculpatory from after September 2018.

[9] MRI contends that it was prejudiced by this late production insofar as it was unable to raise certain questions with Edwards during his deposition. The deposition may be reopened briefly for that purpose.

*adopted*, 2021 WL 863746 (C.D. Cal. Mar. 8, 2021). Boyle failed to do this, and he failed to take any other reasonable steps to preserve relevant information on his laptop.

### 2. Text Messages & Emails

As another court has noted, "[i]t takes, at most, only a few minutes to disengage the auto-delete function on a cell phone." *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019). Failure to either disengage the auto-delete setting or to back up messages to a cloud server prior to deleting them from a device "is sufficient to show" that a defendant "acted unreasonably." *Id.*; *cf. Steves & Son, Inc.*, 327 F.R.D. at 108–09 (suspending an automatic delete policy would "at worst" clutter a party's inbox, which is a "reasonable burden to assume" if the documents are important in the litigation). Still, courts are to be "sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts" as "some litigants, particularly individual litigants, may be less familiar with preservation obligations[.]" Fed. R. Civ. P. 37(e), advisory committee notes to the 2015 amendments.

In this case, the defendants admit that they did not change the settings on their phones to stop the automatic deletion of text messages; indeed, it is their explanation for not producing some of the messages requested by MRI. Nor is there any evidence that they backed up the messages to a cloud server. To the extent that the defendants allowed their cell phones or emails to automatically delete messages without taking any other steps to preserve them, such conduct was unreasonable.[10] The Tripod Defendants do not contest this issue.

And as to the Sales Defendants, they argue the court should be sensitive to the fact that they, and their counsel as a member of a small firm, have limited resources to devote to discovery.

---

[10] As explained in more detail herein, the court also concludes that some of the defendants intended to delete certain text messages and emails. That the willful destruction of evidence is likewise inconsistent with a reasonable attempt at preservation requires no explanation.

(*See* ECF 143 at ¶ 8). But the court does not find it plausible that the Sales Defendants are so impecunious or unsophisticated as to be unable to understand that they should not take steps to destroy evidence or fail to take steps to prevent evidence from being deleted.

***

In sum, the court finds that spoliation occurred with respect to the contents of Boyle's laptop; Kimball's, Boyle's, and Edwards' text messages, except those allegedly sent between Kimball and Boyle prior to September 28, 2019; Drab's, Keenan's, Olesky's, and Moran's text messages from March 24, 2019, forward; and all of the defendants' emails, except for the Lorenzo emails. The next question is whether such spoliation resulted in prejudice under Rule 37(e)(1) or occurred with intent under Rule 37(e)(2) such that court-ordered relief is appropriate.

## II. Prejudice under Rule 37(e)(1)

"Even after finding that spoliation occurred under Rule 37(e), a court may not impose sanctions remedying the spoliation without first finding that the moving party was actually prejudiced by the spoliation." *Johns v. Gwinn*, 503 F. Supp. 3d 452, 470 (W.D. Va. Nov. 30, 2020); *see also* Fed. R. Civ. P. 37(e)(1). "Spoliation causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim." *Brittney Gobble Photography, LLC v. Sinclair Broadcast Grp., Inc*., No. SAG-18-3403, 2020 WL 1809191, at *4 (D. Md. Apr. 9, 2020) (internal quotation omitted). The moving party cannot be expected to "demonstrate with certainty the content of the lost evidence," but the moving party must "demonstrate a likelihood that the lost evidence would have been favorable to the moving party's case." *Johns*, 503 F. Supp. 3d at 470 (internal quotation omitted). The delayed production of evidence also has been found to cause prejudice. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*,

269 F.R.D. 497, 532 (D. Md. 2010) (citing *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *8–9 (N.D. Ill. May 25, 2010)).

In this case, MRI argues that it has been "severely prejudiced" by the destruction of ESI because it was forced to depose all of the defendants (for a total of twelve depositions) without "a significant amount of relevant information at its disposal." (ECF 130-1 at 45). Kimball and Boyle each had their depositions continued to allow them to supplement their productions, causing these two depositions to each be conducted over three separate days, costing MRI tens of thousands of dollars. MRI also contends that the defendants' actions have deprived it of direct evidence, including a forensic report of what Boyle and Kimball did on their laptops before leaving MRI; the signed non-competes of all the Sales Defendants; communications exchanged between the Tripod Defendants and Sales Defendants about Tripod while they worked for MRI; and metadata from the screenshots of Boyle's text messages. As a result, they argue, MRI will need to rely more on circumstantial evidence, which may be confusing or unpersuasive to a jury.

In support of its position, MRI relies on *Victor Stanley*, in which the court found that the defendants' bad faith in deleting and lying about the existence of ESI warranted a presumption of relevance and prejudice, and noted that "even if the [lost] files were cumulative to some extent, Plaintiff's case against Defendants is weaker when it cannot present the overwhelming quantity of evidence it otherwise would have had to support its case." 269 F.R.D. at 533.

The defendants assert that Kimball and Boyle did not use their MRI laptops for Tripod-related business and that any responsive emails to or from those devices should have been collected by the defendants' ESI vendor; that the hundreds of pages of responsive text messages to and from Kimball which were produced are duplicative of any text messages which were unable to be recovered from Boyle's phone; and that there is no prejudice resulting from the lack of metadata

23

from the Boyle screenshots as counsel has declared that they were produced between November 6 and 8, 2019.

### 1.  *Laptops*

MRI wished to conduct a forensic study of Boyle's laptop to search his internet browsing history, USB connection history, and file history (which would help determine what files the user was accessing and moving) to illuminate what Boyle was doing for Tripod while still employed by MRI. Without a better sense of either the quality or the quantity of the evidence MRI has amassed with respect to its claims against Boyle, it is not clear how much prejudice may have resulted from the loss of the contents of Boyle's laptop. It may be that in the context of trial MRI has an abundance of evidence showing—for example, that Boyle was using MRI resources to launch the Tripod venture. For that reason, the court reserves ruling on this issue until it is clear what evidence will be presented in the context of trial. *See NuVasive, Inc. v. Kormanis*, No. 1:18CV282, 2019 WL 1171486, at *12 (M.D.N.C. Mar. 13, 2019), *report and recommendation adopted,* 2019 WL 1418154 (Mar. 29, 2019) (citing cases reserving ruling on Rule 37 sanctions until trial to "see how the evidence is presented").

### 2.  *Text Messages*

It is not logical to conclude that Kimball's text messages wholly duplicate Boyle's or anyone else's, as Kimball's production would not capture any communication not involving him. Still, the production of Kimball's text messages at the very least makes any resulting prejudice less acute than it otherwise would have been. *See Steves and Sons, Inc.*, 327 F.R.D. at 110 (potential prejudice mitigated by retention of communications from another custodian). As to relevance, MRI of course cannot be expected to show with any certainty the contents of the messages deleted by the defendants' alleged auto-delete policies, but it is enough to show that there is a likelihood the

24

messages would have been relevant to the litigation. In this case, the court is satisfied that some of the messages would have been relevant. It is apparent from the record that the defendants were in frequent communication regarding MRI, Tripod, and the departure of various employees from one company to the other. But it is another matter whether and to what extent the loss of these messages was prejudicial. The court therefore reserves ruling on the issue with respect to Drab, Keenan, Olesky, and Moran, until the degree of prejudice is clarified in the context of trial.

As for the text messages associated with the tapbacks in Kimball's production, it appears that Kimball's failure to delete the tapbacks has actually preserved the underlying messages. Accordingly, presenting a jury with the tapback is like having them look at the message in a mirror; it is not the original, but it is a faithful reproduction. Indeed, in some ways, it may be more powerful evidence, as a juror may conclude from Kimball's attempt to delete the messages that he believed them to be sufficiently harmful to his case to warrant deletion. No prejudice—or at the most only minimal prejudice—has resulted from the deletion of these underlying messages.

And as for Boyle's text messages, the defendants are correct that there is little prejudice resulting from the deletion of those messages which were produced in screenshot form and those which were produced by Kimball. Still, as MRI points out, it "does not know what it does not know" and there may well be other relevant messages that were deleted. (ECF 130-1 at 46). The court therefore lacks sufficient information (which is no fault of MRI's) to weigh the prejudice that may have resulted from any potential loss of Boyle's other text messages.[11]

### 3.  Emails

#### a.  Tripod Healthcare Emails

---

[11] However, as explained below, the court finds that Boyle intentionally deleted these messages, which provides an alternative path to relief for MRI.

MRI has a copy of the Tripod healthcare email sent from Boyle to Edwards. Accordingly, no prejudice has resulted from the destruction of or failure to produce this email.

### b. Tripod Job Description Emails

MRI has a copy of the Tripod job description email sent from Kimball to Edwards and to Keenan but does not have a copy of the similar message that went to Olesky and Moran. Kimball denied sending such messages. (*See* ECF 130-3, Ex. 2, Kimball Dep. at 44:8–46:8). But the same day he sent the description to Edwards, he also texted Keenan, Moran, and Olesky asking for their personal email addresses, advising Moran to look for an email from him, providing Keenan a document entitled "NewCoJob.docx" and asking what his new title should be, and telling Olesky he will provide a job description and compensation package in the morning. (*See* ECF 130-21, Ex. 20 at TRIPOD 9578, 9609, 9662). This is clear and convincing evidence that the Sales Defendants each received a job description email and, without this evidence, MRI is likely to be prejudiced in its ability to prove that Kimball solicited Olesky and Moran.

### c. Maryland Salesperson Exam Emails

MRI has a copy of the Maryland salesperson exam email sent from Kimball to Keenan, and the completed paperwork sent back from Keenan to Kimball; but it does not have a copy of any completed paperwork sent back from the other Sales Defendants to Kimball. Given that all of the Sales Defendants were copied on the message sent by Kimball and produced by Keenan, no prejudice results from Kimball's failure to produce the message. But it is one thing for the Sales Defendants to have received a request to fill out paperwork required to work at a new company, and it is another to have filled out the paperwork and returned it. Accordingly, prejudice may result from the failure to produce the return paperwork, which could be relevant evidence as to MRI's claims against the Sales Defendants.

*d.   Schedule Next Week Emails*

MRI has a copy of the Schedule Next Week email sent by Kimball, along with Olesky's and Keenan's responses to the email. Accordingly, no prejudice results from the destruction or failure to produce this email.

***

In sum, the courts finds that prejudice has resulted from the spoliation of the Tripod job description emails sent from Kimball to Olesky and Moran, and from the completed Maryland Salesperson paperwork emails allegedly sent from Edwards, Olesky, and Moran to Kimball. The court will reserve for trial a ruling on whether prejudice resulted from the erasure of the contents of Boyle's laptop, or from the deletion of text messages by Drab, Edwards, Keenan, Olesky, and Moran.

### III. Intent under Rule 37(e)(2)

The Fourth Circuit has not spoken about the level of intent required to impose sanctions under Rule 37(e)(2), but cases predating the 2015 amendments to Rule 37 demonstrate that the party which failed to preserve ESI need not have acted in bad faith. *See Steves and Sons, Inc.*, 327 F.R.D. at 110 (citing cases). Merely negligent, or even grossly negligent, conduct is not a sufficient basis to impose sanctions under Rule 37(e)(2). *See* Fed. R. Civ. P. 37(e) advisory committee note to the 2015 amendment; *see also Johns*, 503 F. Supp. 3d at 462, n.7. Still, sanctions under Rule 37(e)(2) are available regardless of whether there is prejudice. Fed. R. Civ. P. 37(e)(2).

MRI argues that the cumulative actions of the Tripod Defendants—producing only evidence that is helpful to the defendants and hiding or destroying evidence which is not—shows that they had the specific intent to deprive MRI of the lost ESI. For example, the Tripod Defendants' initial production contained none of Kimball's communications with the Sales

Defendants during or prior to January 2018 and did not include any text messages at all. Further, MRI points out that the Tripod Defendants have repeatedly changed their testimony: they claimed during a deposition that certain emails did not exist and then found them during a lunch break; they claimed ESI did not exist and then subsequently produced it; they allegedly selectively deleted certain emails and text messages; and Boyle's explanation about what happened to his text messages evolved significantly in a manner that seriously undermines his credibility, as described above. The Tripod Defendants do not contest this other than to state in general terms that MRI's entire motion is founded on assumptions and is not accurate.

### 1. Laptop

MRI contends that the fact that Boyle reset his laptop—contrary to MRI policy—is evidence that he was intentionally trying to cover his tracks. In its view, this is consistent with his attempts to destroy other evidence, such as Moran's non-compete, an email Keenan sent to Kimball's MRI account, and other customer information in MRI's database. For his part, Boyle maintains that he reset his laptop to protect his personal information. There is sufficient, though not definitive, evidence to conclude that Boyle intentionally reset his laptop to prevent MRI from obtaining evidence to use in this litigation. In the absence of direct evidence, a conclusion of necessity rests heavily on determinations of witness credibility—an issue best reserved for a jury.

Under these circumstances, the case of *NuVasive, Inc. v. Kormanis* is instructive. In that case, "internal inconsistencies" in the defendant's "recounting of events g[a]ve reason to doubt his assertions" about steps he took to preserve ESI. 2019 WL 1171486, at *14. Given the shifting testimony of the defendant, the court found that "evidence in the record could sustain (but does not mandate) a finding that" the defendant "falsely blamed" the loss of text messages on "a 30-day deletion setting on his iPhone[.]" *Id.* at *15. Consequently, the magistrate judge recommended

that the court allow appropriate evidence to be presented to the jury, which with proper instructions might determine the reasons for the non-production and the impact that such non-production had on the merits of the parties' claims—for example, whether an adverse inference was warranted. *See id.*

So too here. Accordingly, the court will allow the jury to hear appropriate evidence regarding the reasons Boyle reset his laptop, to determine whether Boyle reset his laptop with the intent to deprive MRI of evidence, and to determine the impact that any non-production of any evidence it contained may have on the merits of the parties' claims and defenses.

### 2. Text Messages

First, the failure to turn off an auto-delete setting alone is insufficient to find intent. *See Brittney Gobble Photography, LLC*, 2020 WL 1809191, at *9–10 (emails purged as a matter of course pursuant to a document retention policy two months after receiving subpoena was insufficient for finding of intent to deprive and was at most gross negligence). Thus, the court does not find that Drab, Keenan, Olesky, or Moran intentionally deleted their text messages.

Second, the court finds that Kimball intentionally deleted the messages associated with the tapbacks that were inadvertently preserved. Kimball offers no explanation for why these messages would have been deleted, and the fact that these messages conflict with Kimball's deposition testimony and are relevant to deals for their new business venture lends support to MRI's contention that they were deleted intentionally.

Finally, the court finds that Boyle intentionally deleted his text messages. As Boyle's counsel has confirmed, Boyle had evidence of his text messages (at least in the form of screenshots) on his phone in November 2019, six months after litigation began and after Boyle received a request to preserve relevant evidence; and counsel has also confirmed that these

screenshots, and the messages they evidenced, no longer exist. Given Boyle's evolving testimony about when and how he took screenshots of his text messages, the court does not find it plausible that—dating back to March 2016—Boyle reviewed his text messages daily to take screenshots of select messages prior to their being deleted by his iPhone's auto-delete function. The most probable explanation is that Boyle took the screenshots in November 2019, emailed them to counsel, and then deleted all his text messages and screenshots.

### 3. Emails

The Tripod Defendants maintained that they did not have any auto-delete settings on their emails; indeed, they maintain that they did not delete any emails at all. The Sales Defendants first claimed they had no documents relevant to the case in their possession, (s*ee* ECF 130-31, Ex. 30, Sales Defendants RFP Responses), and stated that their emails automatically deleted every thirty days, (*see, e.g.*, ECF 130-9, Ex. 8, Keenan Dep., 79:17-80:3); yet in their May 2020 production all of the Sales Defendants produced relevant emails dating back to May 2018. MRI argues it is highly implausible that each of these defendants set up policies to automatically delete emails every thirty days and that, in any event, the May 2020 production belies this notion. The Sales Defendants, in a short opposition, argue that the additional discovery which produced relevant documents was provided once counsel—a member of a small firm—procured a third-party vendor to search the Sales Defendants' phones and emails, and that they were unable to do this before using that vendor to make the messages accessible. (*See* ECF 143 at ¶¶ 6, 7). Their conduct, they argue, was negligent at the very worst. (*See id.* at ¶ 10).

The defendants offer no satisfying explanation for what happened to the emails which MRI knows were sent and received but which were not produced during or after discovery. The court

therefore concludes that these emails were intentionally deleted for the purpose of depriving MRI of evidence in this litigation.

***

In sum, the court finds that Boyle intentionally deleted his text messages and the associated screenshots as well as the Tripod healthcare and Schedule Next Week emails; Kimball intentionally deleted the messages associated with the tapbacks and the Tripod job description emails and Schedule Next Week emails; Drab intentionally deleted the Schedule Next Week email; Edwards intentionally deleted the Schedule Next Week, completed Maryland Salesperson paperwork, Tripod healthcare, and Tripod job description emails; Keenan intentionally deleted the Schedule Next Week email; Olesky intentionally deleted the Schedule Next Week, completed Maryland Salesperson paperwork, and Tripod job description emails; and Moran intentionally deleted the Schedule Next Week, completed Maryland Salesperson paperwork, and Tripod job description emails. The court will allow a jury to determine whether Boyle intentionally deleted the contents of his MRI laptop to deprive MRI of evidence in this litigation.

## IV. Rule 37 Relief

The final question with respect to the spoliation of ESI concerns the appropriate relief. MRI seeks a series of adverse inferences and jury instructions; a ban on the defendants' ability to introduce certain evidence at trial; and monetary sanctions. The court will address the appropriate sanctions in the context of Rule 37(e)(2) and Rule 37(e)(1) in turn.

### A.  Rule 37(e)(2)

Under Rule 37(e)(2), the court may, upon finding the party acted with the intent to deprive another party of the information's use in the litigation, presume the information was unfavorable, instruct the jury that it may or must presume the information was unfavorable, or dismiss the action

or enter a default judgment. The Fourth Circuit permits an adverse jury instruction where the spoliator "knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995).

In this case, the court preliminarily finds it is appropriate to instruct the jury that the messages associated with Kimball's tapbacks were deleted and were unfavorable to him; that Boyle's text messages were deleted and were unfavorable to him; and that all of the emails identified by MRI but which were not produced by the defendants were deleted and were unfavorable to the party which should have produced them. The court reserves the right, however, upon the full presentation of evidence at trial, to supplement or modify its ruling in the interests of promoting justice and deterring discovery misconduct.

### B. Rule 37(e)(1)

Under Rule 37(e)(1), the court—upon finding prejudice to another party from the loss of information—may "order measures no greater than necessary to cure the prejudice." Such sanctions may include "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Victor Stanley*, 269 F.R.D. at 533. A district court has "broad discretion in choosing an appropriate sanction," but should endeavor to serve the "prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). As another judge of this court has said, courts "must strive to issue orders that generate light, rather than heat, and without ignoring the magnitude of willful misconduct and prejudice, must fashion remedies that strike the appropriate balance between those that are normative and those that are compensatory." *Victor Stanley*, 269 F.R.D. at 534.

In this case, the court finds that to cure the prejudice created by the loss of ESI, it is necessary to impose a monetary sanction on the defendants, who will be held liable for the attorneys' reasonable fees, experts' fees, and costs incurred by MRI in their investigation of this misconduct and their filing of this motion, adjusted to reflect the extent to which the motion was successful and in proportion to each defendant's culpability. Such a sanction "compensates the prejudiced party" and "punish[es] the offending party," thereby "deter[ring] the litigant's conduct [and] sending the message that egregious conducted will not be tolerated." *Id.* at 536. Additionally, the court will allow limited reopening of the depositions of the defendants, if MRI so chooses, in order to allow MRI to ask questions that it has not already had occasion to ask about any documents produced late in the discovery process or after the close of discovery. The court reserves the right, upon the full presentation of evidence at trial, to supplement or modify its ruling in the interests of promoting justice and deterring discovery misconduct.

## V.  Inherent Powers

Next, MRI also seeks to invoke this court's inherent authority to sanction discovery-related misconduct related to loss of a document which does not constitute ESI. Rule 37(e) covers only ESI, and therefore the question of sanctions for failure to preserve non-ESI falls under the court's inherent authority. *Steves and Sons, Inc.*, 327 F.R.D. at 104. When a party in the Fourth Circuit seeks to prove that spoliation warrants a sanction under its inherent power, that party must show: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery. *Id.*; *see also Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013).

The party seeking spoliation sanctions must show intentional conduct on the part of the destroyer but need not prove bad faith. *Id*.

MRI contends that Boyle has admitted to destroying physical evidence—namely, a handwritten operating agreement that was a precursor to formally establishing Tripod. Boyle's deposition, read in context, is not so definitive. Boyle was the only person who had a copy of this handwritten agreement, and he speculated that he may have destroyed it after the formal operating agreement was executed but said "I don't recall doing that"—i.e., destroying it. (ECF 145-3, Ex. 3 Boyle Dep. 78:2-20). In a subsequently filed affidavit, Boyle stated that he believes he has been unable to locate the document because his family misplaced several moving boxes when they relocated in October 2019. (ECF 145, Ex. 17, Boyle Aff. ¶¶ 5–9).

If Boyle did, in fact, accidentally lose the document while moving, this likely would not be sufficient culpability. But even if MRI could show that Boyle had a culpable state of mind, it is unlikely that this preliminary agreement constitutes a critical piece of evidence warranting the exercise of the court's inherent powers: It appears MRI has evidence of the negotiations, timing, and ownership interests of the defendants' preparations to start Tripod as they were subsequently formalized. MRI, therefore, was minimally prejudiced by the missing handwritten agreement. Accordingly, the court will not exercise its inherent powers to sanction Boyle for the loss of the handwritten agreement.

## VI. Counsel Misconduct

Next, MRI also argues that sanctions are appropriate in light of what it describes as opposing counsel's misconduct. Rule 26(g) of the Federal Rules of Civil Procedure requires counsel to certify that to the best of the person's knowledge formed after a reasonable inquiry a discovery response or objection is, among things, consistent with the Federal Rules and warranted

by existing law, and a disclosure is complete and correct. *See* Fed. R. Civ. P. 26(g); *see also id.*, advisory committee note ("the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsible to the discovery demand."). "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

MRI contends that counsel for the Tripod Defendants took no action to place a litigation hold on their clients' text messages or emails; redacted relevant messages when they finally produced documents; and helped Boyle conceal the metadata for the screenshots of his text messages. First, while better practice is for counsel to instruct their clients to preserve their text messages, it is not necessarily their responsibility to ensure their client has done so. *See Paisley Park Enters., Inc.*, 330 F.R.D. at 234 (the burden to preserve relevant ESI rests with the parties, and the parties are responsible for the conduct of their attorneys rather than the other way around). Second, though counsel may have been overzealous in its redacting of documents, it appears that MRI now has obtained unredacted copies of most of the exchanges it has identified as being relevant. (*See* ECF 130-1 at 14, n. 8). To the extent that MRI has a basis to believe additional documents should be produced in unredacted form, counsel should confer and seek an amicable resolution pursuant to this court's local rules. *See* Local Rule 104(7) (D. Md. 2021) ("Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them" and the court "will not consider any discovery motion unless the moving party has filed a certificate reciting" certain information to aid the court in its determination). Finally, given the volume of material which was withheld in this litigation and the number of documents which were lost or deleted, the court understands why counsel for MRI

speculates that counsel for the defendants may have in some fashion assisted Boyle in concealing the metadata associated with the screenshots of his text messages. But the evidence in the record is not sufficient to permit the court to do anything more than speculate. Accordingly, the motion as it relates to counsel misconduct will be denied.

## CONCLUSION

For the reasons discussed herein, MRI's motion will be granted in part, reserved in part, and denied in part. A separate Order follows.


 August 27, 2021                                                              /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge