## CONCLUSION

For the reasons discussed above, the defendants' motions to alter or amend the judgments or for new trials (ECFs 270, 272, 274) will be Denied. MRI's motion for attorneys' fees (ECF 267) will be Granted in part and denied in part as set forth in this memorandum.[7] A separate Order follows.

_6/10/22_
Date

_CCB_
Catherine C. Blake
United States District Judge

---

[7] MRI's motion for its bill of costs (ECF 275; responses at ECF 344 and ECF 348; reply at ECF 351) will be handled initially by the Clerk at the appropriate time. *See* Local Rule 109 (D. Md. 2021).

### C.  Re-opened Deposition

As conceded by MRI, the transcript deposition costs will be assessed in the Bill of Costs, and so they are reduced to $0 for the purposes of the motion for attorneys' fees. (*See* ECF 267).

### D.  Reduction to account for mixed outcomes

The defendants propose a 50% reduction in the final award to comply with the sanctions order's language prescribing that the award be "adjusted to reflect the extent to which the motion was successful." MRI contends that the adjustment should be no more than 10%.

No heuristic for this kind of adjustment is perfect. To simply count the number of claims that were unsuccessful ignores differences in the complexity of various parts of the motion. The great majority, though not all, of the court's findings were in favor of MRI. A reduction of 15% will be applied. Discounting the total award of $132,368 ($122,288 + $10,080 + $0, per §§ IV(A)–(C) *supra*) by 15% yields a total of $112,512.80.

### E.  Allocation between defendants

MRI proposes that each Sales defendant be responsible for 5% of the attorneys' fees awarded by the court, with the Tripod defendants collectively responsible for the remaining 80%:

| Sanctions-related fees, post-reduction: | | |
|---|---|---|
| **Defendant** | **Culpability** | **Apportioned** |
| Tripod defendants | 80% | $90,010.24 |
| Edwards | 5% | $5,625.64 |
| Keenan | 5% | $5,625.64 |
| Moran | 5% | $5,625.64 |
| Olesky | 5% | $5,625.64 |

The court finds this reasonable, and the responsibility will be allocated accordingly.

were unreasonable. MRI has carried its burden, and its $102,680 bill for sanctions motion attorneys' fees will stand. (ECF 267-2, Ex. 1 at 2–4).

This is also true of the MRI attorneys' time at the sanctions motion hearing and re-opened depositions. While normally only one attorney would be reimbursed for attendance at a hearing under Guideline 2c, the factual complexity of the sanctions motion and junior attorney Liane Kozik's central role in preparing the briefing (which was argued by senior attorney Donald English, as anticipated by the footnote to Guideline 2c) justifies a second attorney's presence and compensation at an attorney (rather than paralegal) level. The re-opened depositions, however, are different; in line with Guideline 2b and its footnote, the court will eliminate duplicate attendees where the senior attorney merely attended as the junior attorney observed, a situation contrary to the Guidelines' example justifying multiple attendees.[6] This removes seven hours of English's time, reducing the sanction deposition fees by $2,800, from $22,408 to $19,608.

The attorneys' fees lodestar amount is therefore the sum of the motion and hearing costs ($102,680) and the re-opened deposition attorney costs ($19,608), which is $122,288.

### B. Expert Witness Fees

The expert fees submitted by MRI (with the exception of the withdrawn March 18, 2020, entry) were directly related to the sanctions motion and are covered by the Sanctions Order. (ECF 267-3, Ex. 2). These expert witness fees are the original total ($12,754.75) less the withdrawn entry ($2,674.75), which is $10,080.

---

[6] The court thus eliminates these entries: 10/11/2021, English, D., $400/hr., 5.0 hrs., Attend Olesky/Edwards/Keenan depositions (led by Kozik and Glover); 10/14/2021, English, D., $400/hr., 2.0 hrs., Attend Moran deposition (led by Kozik). (ECF 267-2, Ex. 1 at 5).

Olesky's conduct did not constitute breach of contract but did contribute to the civil conspiracy or tortious interference.

For all these reasons, the court will deny the Sales Defendants' motion either to amend the judgment or for a new trial based on the alleged non-existence of a contract, the alleged unconscionability of the damages awards, and the alleged inconsistencies of the verdicts.

## IV. Sanctions and Bill of Costs

Having resolved the new trial motions, the court next determines MRI's recovery based on the earlier sanctions order. The defendants contest the requested fees.

### A. Attorneys' Fees for Sanctions Work

The attorneys' hourly billing rates[5] were reasonable based on the attorneys' years of experience and the applicable guideline rates. Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, Guidelines Regarding Hourly Rates, Local Rules, App'x B § 3 (D. Md. 2021). Generally, the party seeking fees "has the burden of proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." *CoStar Grp., Inc., v. LoopNet, Inc.*, 106 F.Supp.2d 780, 788 (D. Md. 2000) (citations omitted). Those "records must specify, for each attorney, the date, the hours expended and the nature of the work done." *Id.* (citation omitted). MRI has done so. (ECF 267-2, Ex. 1). Except for arguments over how much to discount the total figure by due to the failure of certain elements of the sanctions motion (*see* § IV.D, *infra*), the defendants offered only conclusory statements to contend that these time entries

---

[5] Donald English (21 years experience; $384–400/hour; guidelines rate of $300–475/hour); Liane Kozik (5 years experience; $264–284/hour; guidelines rate of $165–300/hour); Clifford Glover (6 years experience; $235/hour; guidelines rate of $165–300/hour); Yodeski Acquie (7 years experience; $300/hour; guidelines rate of $165–300/hour).

### C. Inconsistency

Finally, the Sales Defendants argue that the jury issued verdicts which were inconsistent. The court construes these arguments as a motion under Rule 49, which governs inconsistencies in jury verdicts. Fed. R. Civ. P. 49. Counsel must "object to any asserted inconsistencies in the response to jury interrogatories prior to the discharge of the jury." *White v. Celotex Corp.*, 878 F.2d 144, 146 (4th Cir. 1989), *cert. denied* 493 U.S. 964 (1989). Failure to bring purported inconsistencies to the court's attention prior to the release of the jury constitutes a waiver of a party's right to seek a new trial. *Id.* The Sales Defendants did not object to any purported inconsistencies before the release of the jury, so they have waived this basis for requesting a new trial.

The court therefore need not reach the substance of the Sales Defendants' alleged inconsistencies, but regardless, they are without merit. The Sales Defendants argue that the jury acted inconsistently by awarding MRI small sums of individual breach of contract damages from Edwards, Keenan, and Moran and then also including those defendants in the larger $6,103,248 tort damages award. It is not inconsistent to find and award separate damages for separate breaches of separate contracts (Count II) and also to find joint and several liability for tortious actions joined by multiple tortfeasors. Tort and contract actions are not the same. *See Consumer Prot. Dov. v. Morgan*, 874 A.2d 919, 950 (Md. 2005) (describing the rationale for joint and several liability for tortfeasors who act in concert). Nor was it inconsistent for the jury to find that — despite identical initial allegations and theories — Olesky was the only Sales Defendant not liable for breach of contract but was, like the others, still liable on the tort claims. The jury is free to assess the evidence and apply the appropriate standard for each count, even if it means

14

Second, the Sales Defendants attack Keenan's punitive damages obligation. They argue that Count VII's punitive damages award against Keenan was unconscionable as a matter of law, because there was no clear and convincing evidence of Keenan's malice. At trial, the jury heard evidence that Keenan had said of Trancucci, "I hate that guy so much. It was dislike up until this point. I truly and utterly hate him." (ECF 426-14, Ex. 14, Plaintiff's Exhibit 139 at 3 of 3). The jury also heard evidence that, when Boyle intercepted emails at MRI, Keenan said, "Good thing we still have our mole planted at the enemy." (ECF 426-16, Ex. 16). The jury's finding of malice need not be disturbed.

As they did with the compensatory damages, the Sales Defendants also argue that Keenan cannot afford the $65,000 punitive damages award on his approximately $140,000 annual salary. Keenan did not introduce evidence at trial of his inability to pay a punitive damages award, however, and the $65,000 punitive damages award is just one percent of the compensatory damages award. *Bowden v. Caldor, Inc.*, 710 A.2d 267, 284 (Md. 1998) (stating that courts reviewing punitive damages awards for excessiveness should examine whether the punitive damages bear a reasonable relationship to the compensatory damages). And Keenan shares liability for the compensatory damages award with wealthier and more culpable co-defendants Boyle and Kimball. *Cf. Saint Annes Development Co., LLC v. Trabich*, 737 F. Supp. 2d 517, 532–33 (D. Md. 2010), *rev'd on other grounds*, 443 Fed. App'x 829, 833 (4th Cir. Aug. 17, 2011) (finding a $66,000 punitive damages award unjustified and beyond the defendants' ability to pay where the defendants earned about $350,000 but were also solely responsible for $3.5 million compensatory damages award). While Keenan's ability to pay is relevant in the punitive damages context, the limited information available to the court suggests that the jury's award, while painful, is not excessive or unconscionable.

13

Ex. 11; ECF 426-12, Ex. 12). This evidence also included testimony from MRI leadership about Keenan's and Edwards's agreements in particular and the company's practices for new project managers. (*See, e.g.*, ECF 426-2, Ex. 2, Trial Tr. Vol. II at 48:12-20). And the jury heard evidence about a batch of non-competition agreements that went missing from active employee files in Fall 2018, allegedly attempts to destroy human resources paperwork to stifle future litigation. (ECF 426-5, Ex. 5, Trial Tr. Vol. VIII, 134:20–139:8; 146:4-22).

The jury heard this and other evidence and found that contracts existed and had been breached. There was no clear error here, and the jury's finding was not against the weight of the evidence.

### B. Unconscionability

The Sales Defendants next argue that the damages awards were unconscionable. First, they argue that the $6,103,248 in compensatory "lost profits" damages from Counts VI and VII was excessive. Under Maryland law, a compensatory damage award should be reduced if "the verdict is 'grossly excessive,' or 'shocks the conscience of the court,' or is 'inordinate' or 'outrageously excessive,' or even simply 'excessive.'" *Banegura v. Taylor*, 541 A.2d 969, 976 (Md. 1988) (internal citations omitted). MRI's damage analysis expert testified that MRI's lost profits were between $3.5 million and $7.9 million based on possible growth scenarios. (ECF 426-6, Ex. 6, Trial Tr. Vol. X at 186–95). The jury's award of $6.1 million was within that range and does not shock the conscience based on the evidence of MRI's lost profits. That $6.1 million award may be a significant amount compared to the Sales Defendants' resources, but "a defendant's wealth is irrelevant to compensatory damages" even though it may be integral to punitive damages considerations. *Wallace v. Poulos*, 861 F. Supp. 2d 587, 603 (D. Md. 2012).

12

(C) the verdicts were inconsistent because the jury assigned individual breach

of contract damages but joint and several tort damages and because the

jury found only three of the four Sales Defendants had breached their

contracts.

All three theories fail, and the motion to alter or amend the judgment (or, in the

alternative, for a new trial) will be denied.

### A. Contract

The Sales Defendants argue that it was clear error to enter a judgment for MRI based on

jury findings that contracts bound Earl Edwards, Robert Keenan, and Randy Moran.[4] As with

Boyle's and Kimball's motions, Edwards, Keenan, and Moran failed to make these arguments

before the entry of judgment despite having the opportunity. But even assuming the procedural

propriety of this motion under Rule 59(e), the Sales Defendants have failed to show a clear error

of law, instead moving for a new trial because they disagree with the jury's finding that contracts

bound Edwards, Keenan, and Moran.

This jury finding was not against the weight of the evidence at trial. Moran signed a non-

competition agreement (ECF 426-13, Ex. 13, Moran Signed Non-Competition Agreement) and

admitted that he had merely skimmed it without fully understanding it (ECF 426-1, Ex. 1, Trial

Tr. Vol. I at 92:15-16; ECF 426-4, Ex. 4, Trial Tr. Vol. VII at 188:24–190:6) despite the law's

presumption that he understood at least the literal meaning of its terms. *Walther v. Sovereign

Bank*, 872 A.2d 735, 745–46 (Md. 2005). The jury heard abundant evidence that Edwards and

Keenan entered into and breached contracts, including Keenan's own admission and Edwards's

employment agreement (ECF 426-4, Ex. 4 at 4:21–6:5; ECF 426-10, Ex. 10 at 1–7; ECF 426-11,

---

[4] The jury found that Matthew Olesky had not breached a contract.

ECF 435-6, Ex. 6, Trial Tr. at 4). MRI presented the jury with sufficient evidence to reasonably

conclude that Kimball had signed a non-compete agreement but that it had been destroyed or

stolen in the course of the defendants' founding of a rival business. The jury's finding that this

non-competition agreement remained in effect even when Kimball changed roles to become a

Sales Manager was not against the clear weight of the evidence, considering that MRI's

restrictive covenants remained in operation for a year after an employee's contract was

terminated (*See, e.g.*, ECF 435-7, Ex. 7, signed MRI non-competition agreements at 5 of 93 ¶

5(b)).

As in Boyle's case, the jury was instructed in the law by the court without objection from

the parties, and the jury then found that a contract existed between Kimball and MRI. Kimball's

disagreement with this finding does not merit a new trial in the face of credible evidence of a

contract and its attendant non-competition agreement, and the jury's finding was not against the

weight of the evidence. Because of this, and likewise because of the lack of any proof of false

evidence or miscarriage of justice, Kimball's Rule 59(a) motion for a new trial will be denied.

**III. Sales Defendants**

The Sales Defendants' motion makes three core arguments:

> (A) It was clear error to enter a judgment for MRI on Counts II (Breach of
>
> Contract), VI (Tortious Interference with Prospective Business
>
> Advantage), and VII (Civil Conspiracy) because the evidence was
>
> insufficient as a matter of law to establish the existence of a contract;
>
> (B) the compensatory damages for Counts VI and VII and the punitive
>
> damages for Count VII were unconscionable and excessive; and

10

## II. Kimball

Kimball's arguments (motion at ECF 274; response at ECF 435; reply at ECF 353) are similar to Boyle's. Kimball, like Boyle, failed to argue that Count I be dismissed or decided as a matter of law in a Rule 56 motion pretrial or a Rule 50(a) motion before judgment. But even assuming that Rule 59(e) was satisfied by disputing the existence of a contract in the summer 2021 pretrial order and during opening and closing statements, Kimball has failed to show clear error or manifest injustice that must be corrected by setting aside the judgment. He did not object to the jury instructions on Count I, and it is not obvious what other clear error on the court's part he wishes to correct. As with Boyle, the manifest injustice in question appears to be his disagreement with the jury's finding that there was a contract — a "weight of the evidence" argument better considered under his Rule 59(a) motion. The motion to amend the judgment under Rule 59(e)(3) will be denied.

The evidence of a binding contract's existence is even stronger in Kimball's case than in Boyle's. MRI presented testimony that Kimball, as a Project Manager, was instructed to sign the non-compete agreement (ECF 435-1, Ex. 1, Trial Tr., 11/2/2021 at 48:12-20 (MRI CFO Mark McLean saying all new MRI project managers were asked to sign the agreement)) and that Boyle had indicated that Kimball had signed it (*id.* at 59:1-20 (McLean testifying that Boyle had said Kimball's non-compete "was taken care of," which he understood to mean that it was signed and in Kimball's personnel folder); *see id.* at 58–60). MRI presented evidence and testimony that Kimball's agreement was among a set of employee non-competition agreements removed from company files, including those of contemporaneous co-employees (Emmett Kaufman and Matthew Ciccotto) who had signed non-compete agreements but whose non-compete agreements wound up missing from the MRI files. (ECF 435-4, Ex. 4, 11/4/21 Kauffman Dep. at 9:7–11:15;

MRI — a "weight of the evidence" argument better considered under Boyle's Rule 59(a) motion. The motion to amend the judgment under Rule 59(e)(3) will be denied.

### B. Rule 59(a) motion for a new trial

Boyle next argues that the jury's finding that a contract existed was against the weight of the evidence and therefore the court should grant him a new trial. At trial, the jury heard copious evidence on the question of the contract's existence — a question ordinarily left to the jury. *See Catholic University of America v. Bragunier Masonry Contractors, Inc.*, 775 A.2d 458, 472–73 (Md. Ct. Spec. App. 2001), *aff'd* 796 A.2d 744 (Md. 2002). Boyle presented evidence that the Contractual Operating Agreement was never signed and that there were terms like territory expansion and exit fee amount — material terms, according to Boyle — that were not agreed upon. MRI presented evidence that the parties operated under the unsigned agreement for four years and agreed to the essential terms through their conduct, including the payment and acceptance of millions of dollars of compensation that were the portion of the office's profits assigned to Boyle in the Operating Agreement. MRI further presented evidence that Boyle represented to outside actors that he was working pursuant to an operating agreement he had in place with MRI.

Having been instructed in the law by the court without objection from the parties, the jury found that a contract existed between Boyle and MRI. Boyle's disagreement with this finding does not merit a new trial in the face of credible evidence of a contract, and the jury's finding was not against the weight of the evidence. Because of this, and likewise because of the lack of any proof of false evidence or of a miscarriage of justice, Boyle's Rule 59(a) motion for a new trial will be denied.

8

never signed and that the parties did not agree to certain material terms (the territory provision and the amount of the exit fee).

MRI argues that Boyle's Rule 59(e) motion is procedurally barred, because Boyle failed to raise his core argument — that no binding contract existed between him and MRI, and therefore the breach of contract claim should be dismissed as a matter of law — before the judgment was issued. In response, Boyle points to (1) the Tripod Defendants' opening statement and closing argument before the jury and (2) pretrial orders (8/24/2021 original at ECF 194 at 10-11; 9/29/2021 revision at 11 ECF 203) in which the defendants articulated the legal theory that they were not subject to non-competition agreements.

Boyle did not move pre-trial for dismissal or summary judgment on Count I, the breach of contract claim. (*See* ECF 100, Defs.' Mot. Partial Summ. J. Count 3 and Pls.' Demand Attorneys' Fees). Nor did he submit a Rule 50(a) motion for judgment as a matter of law at the close of the plaintiff's case in chief or at the close of all evidence before the case was submitted to the jury. And there being no Rule 50(a) motion, he naturally did not submit a Rule 50(b) renewed motion for judgment notwithstanding the verdict. All were pre-judgment opportunities to raise arguments for the legal insufficiency of the breach of contract claim based on the alleged non-existence of a binding contract. But even assuming, without deciding, that defense counsel's mentions of the argument in the pretrial order and in arguments to the jury were sufficient to evade any bar on Rule 59(e) arguments that should have been raised before judgment, Boyle has failed to show clear error or manifest injustice that must be corrected by setting aside the judgment. He did not object to the jury instructions on Count I, and it is not obvious what other clear error on the court's part Boyle wishes to correct. The manifest injustice in question appears to be his disagreement with the jury's finding that there was a contract which bound him and

F.2d 216, 226 (4th Cir. 1978)." *Thompson*, 2002 WL 31777631, at \*6 (footnotes omitted). Those

factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service; (4) the preclusion of
> other employment by the attorney due to acceptance of the case; (5) the
> customary fee; (6) whether the fee is fixed or contingent; (7) time limitations
> imposed by the client or the circumstances; (8) the amount involved and the
> results obtained; (9) the experience, reputation, and ability of the attorneys; (10)
> the "undesirability" of the case; (11) the nature and length of the professional
> relationship with the client; and (12) awards in similar cases.

*Id.* at \*6 n.19 (citing *Johnson*, 488 F.2d at 717-19). As other courts have noted, many of the

twelve *Johnson* factors are inapposite in connection with a sanctions award for a discovery

dispute. *See, e.g.*, *SunTrust Bank v. Nik*, No. 11-CV-343, 2012 WL 1344390, at \*3-4 (E.D. Va.

Mar. 22, 2012); *Beyond Sys., Inc. v. World Ave. USA, LLC*, 2011 WL 2038545 at \*1-2 (D. Md.

May 24, 2011). In this case, the most relevant *Johnson* factors are the time and labor expended,

the novelty and difficulty of the questions raised, the skill required to properly perform the legal

services rendered, and the experience, reputation and ability of the attorneys. Those factors are

addressed in the analysis below.

## ANALYSIS

Boyle, Kimball, and the Sales defendants each filed motions for new trial, and the court

will consider each in turn before taking up the disputes over attorneys' fees and costs.

### I.  Boyle

#### A.  Rule 59(e) motion to set aside the judgment

Boyle argues that it was a clear error of law for the court to enter judgment against him

on the breach of contract claim, because he says that, as a matter of law, there was no binding

contract between him and MRI. He contends that the Contractual Operating Agreement was

is against the clear weight of the evidence, is based on evidence which is false, or will result in a miscarriage of justice. *Finch v. Covil Corp.*, 388 F. Supp. 3d 593, 608 (M.D.N.C. 2019) (citing *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). The court may weigh evidence, assess credibility, and exercise its discretion in ruling on a motion for a new trial. *Finch*, 388 F. Supp. 3d at 608 (citing *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998)). A new trial should not be granted unless it is reasonably clear that prejudicial error has occurred or substantial justice has otherwise not been done. *Pathways Psychosocial Support Ctr., Inc. v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 706 (D. Md. 2002) (citing *Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc.*, 994 F. Supp. 350, 358 (W.D.N.C. 1997)).

**Attorneys' Fees**

To calculate an appropriate award of attorneys' fees, the court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially" factual. *Thompson v. United States Dep't of Hous. And Urban Dev.*, No. MJG–95–309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078-79 (4th Cir. 1986)).[3] Once the lodestar amount has been determined, the court determines whether or not it constitutes a reasonable fee and makes any necessary adjustments. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995). In evaluating both the lodestar calculations and the overall reasonable fee, this court uses "the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577

[3] Unpublished opinions are cited for the persuasiveness of their reasoning, not for any precedential value.

5

## LEGAL STANDARD

### Rule 59(e)(3): Altering or amending a judgment

"Rule 59(e) motions [to alter or amend a judgment] can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) *to correct a clear error of law or prevent manifest injustice.*" *United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 210–11 (4th Cir. 2017) (internal citation and quotation marks omitted) (emphasis added).

These motions are primarily brought pursuant to Rule 59(e)(3), which permits "a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal quotations omitted). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* (internal citations omitted); *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (citing 11 Wright, Miller, & Kane, *Federal Practice and Procedure* § 2810.1, at 163–64 (3d ed. 2012)); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). "In general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Wright and Miller, *Federal Practice and Procedure* § 2810.1 at 124 (2d ed. 1995)).

### Rule 59(a) motion for a new trial

Federal Rule of Civil Procedure 59(a)(1)(A) permits the court, upon motion, to "grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A court should grant a motion for a new trial only if the verdict

4

competing testimony over which terms between MRI and Boyle were settled. Kimball had changed roles within MRI, and, after some time, Trancucci noted that Kimball's contract was missing from his personnel file; he attempted to have Kimball sign a back-dated version of the original Program Manager contract, but Kimball noted that he had become a Sales Manager at that point, and Trancucci did not raise the issue again. Various witnesses testified that the Sales Defendants would have signed contracts and non-competition agreements when they began, though many of the documents had mysteriously gone missing from their files.

The jury found for MRI, awarding:

- Tort claims: $6,103,248 in compensatory damages for lost profits (jointly and severally across all defendants); $530,415 in disgorgement as to Boyle;

- Breach of contract: $6,103,248 in lost profits from Boyle;[2] $74,363 from Kimball; $1 from Keenan; $24,000 from Moran; $1 from Edwards; the jury did not find that Olesky had breached his contract;

- Conversion: $42,300 in compensatory damages from Boyle and Kimball;

- Computer Fraud and Abuse Act: $14,226 in compensatory damages from Boyle and Kimball;

- Punitive damages: $350,000 from Boyle; $250,000 from Kimball; and $65,000 from Keenan.

(ECF 257, Jury Verdict). The defendants filed these motions for new trials.

---

[2] The amount of the judgment against Boyle and MGB would stand on the other counts even if the breach of contract verdict were to be set aside.

disasters. Jonathan Ballard owns MRI, which is based in Virginia but has offices in Maryland.

This action concerns the personnel at the Maryland office. Relevant here, Stephen Trancucci and

Boyle worked together running that office; Kimball was a sales manager; and Edwards, Keenan,

Moran, and Olesky were in sales.

In MRI's view, Boyle and Kimball started planning to create a rival company, the Tripod

Entities, in the spring of 2018. They allegedly stopped working for MRI, used MRI resources to

establish the Tripod Entities, and solicited MRI employees such as the Sales Defendants to work

for Tripod. MRI believes that in September 2018, the Tripod Defendants stole and destroyed

paper and electronic copies of MRI employees' non-compete agreements to obstruct MRI's

ability to challenge the departure of any of its employees who might leave to join Tripod.

MRI sued the Tripod Defendants (Boyle and Kimball) and the Sales Defendants

(Edwards, Keenan, Moran, Olesky) on a variety of counts, including breach of contract, tortious

interference with prospective business advantage, and civil conspiracy.

During the course of discovery, MRI filed a motion for sanctions against the defendants

and their attorneys, alleging the spoliation of a variety of evidence. The court decided largely

(but not entirely) in MRI's favor, reserving certain questions for trial and awarding MRI

monetary sanctions "for the attorneys' reasonable fees, experts' fees, and costs incurred by MRI

in their investigation of this misconduct and their filing of this motion, adjusted to reflect the

extent to which the motion was successful and in proportion to each defendant's culpability."

(ECF 195, Memorandum at 33).

The case went to trial in October and November of 2021. At trial, the defendants

attempted to attack the notion that they were bound by contracts and non-competition clauses

between them and MRI. Boyle operated without a signed agreement, and witnesses offered

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MODERN REMODELING, INC. | * | |
| | * | Civil Action No. CCB-19-1397 |
| v. | * | |
| | * | |
| TRIPOD HOLDINGS, LLC, *et al.* | * | |
| | * | |
| | * | |

\*\*\*\*\*

## MEMORANDUM

Modern Remodeling Incorporated sued defendants Patrick Boyle, Robert Kimball, Earl
Edwards, Matthew Olesky, Randy Moran, Robert Keenan, and their related companies for a
variety of contract and tort claims after MRI learned that they had started a competing business.
MRI prevailed at a three-week jury trial in autumn 2021. Afterward, Boyle and MGB
Investments LLC (collectively, "Boyle") moved for a new trial (motion at ECF 270, response at
ECF 434,[1] reply at ECF 352), as did Kimball (motion at ECF 274, response at ECF 435, reply at
ECF 353) and Edwards, Olesky, Moran, and Keenan (together, "the Sales Defendants") (motion
at ECF 272, response at ECF 426). MRI also filed a motion for attorneys' fees pursuant to
sanctions from earlier in the litigation (motion ECF 267, responses ECF 343 and 347, reply ECF
363).

The issues have been briefed, and no oral argument is necessary. Local Rule 105.6 (D.
Md. 2021). For the reasons stated herein, the court will deny the defendants' motions and grant,
for the most part, MRI's motion for fees.

## BACKGROUND

MRI is a general contracting company that works in the insurance restoration industry; it
assists clients with maximizing insurance coverage and performing repairs following natural

---

[1] This ECF document number refers to a subsequently filed corrected version with citations to final trial transcripts.

1